Vera MICHELSON and Capital District Coalition Against Apartheid and Racism, by its Chairman, Michael Dollard, Plaintiffs,

v.

Paul DALY, Agent in Charge, Federal Bureau of Investigation; James J. Rose, Special Agent, Federal Bureau of Investigation; and Unknown Other Agents of the Federal Bureau of Investigation; Unknown New York State Police Officers; The County of Albany; Albany County District Attorney Sol Greenberg; Albany County Assistant District Attorney Joseph Donnelly; Albany County Assistant District Attorney John Dorfman; Unknown Other Albany County District Attorneys; The City of Albany; The City of Albany Police Chief Thomas Burke; City of Albany Assistant Police Chief Jon Reid; City of Albany Police Lieutenant William Murray; City of Albany Police Detective John Tanchak; Unknown Other City of Albany Police Officers, Defendants.

Aaron ESTIS, Plaintiff,

v.

Paul DALY, Agent in Charge, Federal Bureau of Investigation; James J. Rose, Special Agent, Federal Bureau of Investigation; and Unknown Other Agents of the Federal Bureau of Investigation; Unknown New York State Police Officers; The County of Albany; Albany County District Attorney Sol Greenberg; Albany County Assistant District Attorney Joseph Donnelly; Albany County Assistant District Attorney John Dorfman; Unknown Other Albany County District Attorneys; The County of Albany; The City of Albany; The City of Albany Police Chief Thomas Burke; City of Albany Assistant Police Chief Jon Reid; City of Albany Police Lieutenant William Murray; City of Albany Police Detective John Tanchak; Unknown Other City of Albany Police Officers, Defendants.

Nos. 82–CV–1413, 82–CV–1412.

United States District Court, N.D. New York.

July 25, 1984.

Walter & Thayer, Albany, N.Y., for plaintiffs Michelson and Capital Dist. Coalition; Lanny E. Walter, Albany, N.Y., of counsel.

Oliver & Oliver, Albany, N.Y., for plaintiff Estis; Lewis B. Oliver, Jr., Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., for Federal defendants; William P. Fanciullo, Asst. U.S. Atty., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

In these actions joined for trial by order filed on January 24, 1984, the individual plaintiffs allege violations of constitutional rights stemming from their arrest, detention and prosecution and from the search of the apartment of plaintiff Vera Michelson and the seizure of certain items located there. Plaintiff Capital District Coalition complains of various constitutional violations relating to the free speech and associational rights of its members and to the seizure of its documents from the Michelson apartment. Plaintiffs seek compensatory and punitive damages, attorneys fees and injunctive relief, predicating their claims upon the provisions of 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and the first, fourth, fifth, eighth, ninth, tenth and fourteenth amendments to the United States Constitution. Plaintiffs also assert various state law claims and invoke the pendent jurisdiction of this Court as well as the federal question and civil rights enforcement jurisdiction afforded by 28 U.S.C. §§ 1331 and 1343.

Named as defendants in the captioned suits are agents of the Federal Bureau of Investigation; officers of the New York State Police; the County of Albany, its District Attorney and certain Assistant District Attorneys; and the City of Albany, its Chief of Police and various City Police Officers. The actions are in the discovery stage and the information sought by plaintiffs includes disclosure of the name of a confidential informant known to one or more of the defendants. Before the Court is a motion by the federal defendants for a protective order, Fed.R.Civ.P. 26(c), "directing that no party or witness in this action may disclose the identity of the confidential informant, or directing compliance with such other conditions as the court deems just and proper, aimed at preventing the disclosure or dissemination of such information." A previous motion for the same relief was denied with leave to renew.

### II

The Springboks, a South African rugby team, was scheduled to play a rugby match at Bleecker Stadium, Albany, New York on September 22, 1981. Plaintiff Michelson, a resident of Albany, participated in organizing a demonstration to protest the South African policy of racial apartheid as symbolized by the team. On the evening of September 21, 1981, a search of her apartment, located in the vicinity of the stadium, was conducted pursuant to a warrant issued by the Albany Police Court Judge on the same day. Present in the apartment at the time of the search was plaintiff Estis, a resident of Cambridge, Massachusetts, who had come to Albany to join in the demonstration. The warrant authorized the seizure of weapons and other contraband. According to an inventory filed after the execution of the warrant, the following items were seized from the Michelson apartment at 400 Central Avenue in Albany:

eight fire crackers

five plastic containers each containing a quantity of marijuana

one box of Remington 38 Special containing 35 live rounds of 38 special ammo one speed loader containing five live 38 special +P hollow points.

one leather purse with shotgun shell holders attached.

The complaints in these actions allege that documents and records belonging to the individual plaintiffs and to plaintiff Coalition, whose members were involved in initiating the protest rally, also were seized.

Following the search and seizures, plaintiffs Estis and Michelson were arrested and charged with the offenses of possession of fireworks, in violation of N.Y.Penal Law § 270.00(2)(b)(i) and possession of marijuana, in violation of N.Y.Penal Law § 221.05. Apparently, another resident of the apartment, Michael Young, was arrested at the same time. Plaintiff Michelson alleges that she was held without bail until she was released from confinement on September 24, 1981 on a state writ of habeas corpus. Plaintiff Estis claims that he was incarcerated for six days without bail prior to his release. The charges against both plaintiffs were dismissed in Albany Police Court on December 8, 1981. Although plaintiffs claim that the defendants sought to prevent the playing of the rugby match and the planned peaceful protest attendant thereto, it appears that the match was played and that the demonstration was conducted without incident. *See Selfridge v. Carey*, 522 F.Supp. 693 (N.D.N.Y.1981).

### III

The application for the search warrant for the Michelson apartment was prepared by defendant Donnelly, an Albany County Assistant District Attorney, and was signed by Detective John Tanchak of the City of Albany Police Department. The application included the following allegations:

[A] confidential reliable source has given to members of the Albany Police Department and the affiant information that one John Spearman, a member of the Communist Workers Party, has been engaged in activities in the Albany area relating to the disruption by violence of the rugby game scheduled to be played at Bleeker [sic] Stadium in the City of Albany on the 22nd day of September, 1981. That same source indicated that the apartment specified above was being used by John Spearman both as a residence and as a base to plan their activities in the Albany area relating to the rugby game. The source indicated that said John Spearman was in this area to coordinate the violent activity planned by the Communist Workers Party and was armed with both fire arms and other weaponry. On September 21, 1981, said John Spearman was apprehended by members of the Albany Police Department while driving a stolen automobile. At the time of his arrest, Spearman had in his possession a loaded .38 handgun. At the time of that apprehension, a second individual, also in the car with Spearman, jumped from the car and escaped. On that same day, a search warrant was secured by members of the Albany Police Department for the vehicle occupied by Spearman and, in the trunk of said vehicle were found two (2) home made night sticks with black electrical tape wrapped around them. The apartment described above is believed to have a view or access to a view overlooking Bleeker [sic] Stadium. This source indicated that other members of the Communist Workers Party accompanied Spearman to the Albany area and were also armed and intended to engage in violent activities to disrupt the rugby game and to engage in violence against the Albany Police Department. These members were identified as Michael Young and William Robinson. At approximately 10:30 p.m. the Albany Police Department received a call from one Clara Satterfield, the head of the Albany NAACP, who indicated that the above named individuals had been in attendance at a meeting attended by that organization to coordinate peaceful protest activity and had disrupted it to the extent that she requested police protection from the individuals as her life had been threatened by them.

The source of this information is known by members of this Department to be reliable and information given by this informant in the past has resulted in arrests and convictions. In addition the information given by this informant with respect to Spearman has been corroborated by his apprehension and his possession, at that time, of the weaponry specified.

The "confidential reliable source" referred to in the application is the individual subject of the Government's claim of informer privilege. In reviewing the claim, the Court examined three witnesses *in camera* and their testimony has been transcribed, sealed and made a part of the files in these cases. The witnesses were former Albany County Judge John Clyne, FBI Special Agent James Rose and another special agent of the FBI. The special agents testified to their contacts with the informer, their promises of confidentiality to him, the informer's fear of violent retribution at the hands of the Communist Workers Party, the reliability of his information in other matters, and the specific information furnished by the informer to the authorities relating to the Albany demonstration, including the parts to be played in the demonstration by plaintiffs in conjunction with members of the Communist Workers Party and others. Judge Clyne testified to his *in camera* examination of the informer at a hearing he conducted pursuant to New York law, *see People v. Darden*, 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974), to determine, among other things, whether there was probable cause for the issuance of the warrant for the search of the Michelson apartment. The hearing was conducted in the course of the state prosecution of Michael R. Young and John H. Spearman, Jr. and culminated in denial of motions to suppress items connected to Young and found in the Michelson apartment, items seized from the automobile referred to in the warrant application as "the vehicle occupied by Spearman," and statements made by Young to Detective Tanchak at the Albany Police Department. Judge Clyne testified before the under-signed that the informer's testimony at the *Darden* hearing convinced him that violent activity at the rugby match was to be coordinated by members of the Communist Workers Party, that the informer knew of the plans of the Party and those associated with it and notified the authorities accordingly, and that the informer faced serious physical harm or death if his identity were to be revealed.

## IV

The informer's privilege has been long recognized as essential for effective law enforcement, since the concealment of an informer's identity encourages the communication of knowledge of criminal activity to the appropriate authorities without fear of retaliation or reprisal. *In re United States*, 565 F.2d 19, 22 (2d Cir.1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). "The public has a concomitant interest in avoiding such damage as would deter others from similar cooperation." *Holy Spirit Association v. F.B.I.*, 683 F.2d 562, 564 (D.C.Cir.1982) (MacKinnon, J., concurring). The privilege is applicable in civil as well as in criminal litigation, although its strength is greater in the former, and the burden is on the plaintiffs to demonstrate that their need for information outweighs the claim of privilege. *In re United States*, 565 F.2d at 22–23. It is clear, however, that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957) (identity ordered disclosed where Government informer was the only participant, other than defendant, in criminal prosecution for a drug transaction). Accordingly, the privilege will be unavailing where disclosure would be "relevant and helpful" to an accused in a criminal case, and it also will yield when it is "essential"

to the fair determination of the issues in a civil action.

The Court in *Roviaro* determined

that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628. In examining and balancing the competing interests of the parties in the case at bar, the Court is constrained to take into account the Government's contention that the safety of the informant, the public interest in confidentiality, the needs of effective law enforcement and plaintiffs' lack of need for the information outweigh any considerations militating in favor of disclosure. Also to be weighed are the countervailing arguments of plaintiffs that disclosure of the informer's identity and the information in his possession are essential to establish that the defendants lacked probable cause to believe that there were armaments in the Michelson apartment; that the search warrant application contained false and fraudulent statements "deliberately concocted in order to gain access to plaintiff Michelson's apartment," Joint Memorandum on Behalf of Plaintiffs in Opposition to Motion for a Protective Order at 11, and that defendants distributed untrue and unfounded information relating to planned violence.

█ Applying the balancing test mandated by *Roviaro*, this Court is convinced that the circumstances in this case tip the scales in favor of nondisclosure of the informer's identity. Good reason has been shown here for the informer to fear retaliation or physical harm to himself and his family. The information he furnished was given to the authorities upon the express assurance that his identity would be revealed to no one. Indeed, most law enforcement officials knew him only by a code number. Moreover, the informer was not the only source of information utilized in making the search warrant application or in discovering the program for violent confrontation. A perusal of the search warrant application itself reveals that substantial and significant information justifying a search of the Michelson apartment was obtained by the authorities from sources other than the informer. The arrest of John Spearman, identified by the informer as a dangerous member of the Communist Workers Party and a temporary resident of the Michelson apartment, resulted in the seizure by Albany police officers of a handgun from Spearman's possession and two nightsticks from the trunk of the vehicle he was driving prior to issuance of the search warrant. The information furnished by the informer was corroborated further, according to defendants, by Clara Satterfield, who advised the police prior to the search warrant application that certain Party members previously named by the informer had disrupted a meeting called to plan peaceful protest activities.

In *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), *rev'd on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), a civil rights action, the informer's identity was ordered disclosed, subject to a protective order. The case involved claims for injuries and deaths arising from a gun battle between the police and members of the Black Panther Party at a Chicago apartment in 1969. The Government there claimed the privilege for the informer, whose revelations led to the issuance of a search warrant for the apartment. In tipping the balance in favor of disclosure, the Court in *Hampton* found it significant that "[t]he trial court did not permit the development of a record on the questions of [the officer's] credibility regarding the existence and reliability of his informant and the danger the informant might be subjected to if his identity were disclosed." 600 F.2d at 636. Therefore, there was a serious question as to whether an informer

even existed in *Hampton.* The Court held further, that even if the informant did exist, "disclosure of his identity would be important to a resolution of the case since that informant might be a critical figure in the conspiracy alleged by plaintiffs." *Id.* at 638.

There are significant distinctions between *Hampton* and the case at bar. This Court, based on the papers submitted and a record developed *in camera,* has determined that the informer existed, that his information was reliable, and that he would be subjected to danger if his identity were to be revealed. Moreover, there is no indication that the informer was a "critical figure" in any conspiracy alleged by plaintiffs.

Relying in part on *Hampton,* the Court in *Bergman v. United States,* 565 F.Supp. 1353 (W.D.Mich.1983), directed disclosure to counsel in chambers under a strict protective order requiring that the information gained not be revealed to the clients or to any other person. The circumstances of that case also are to be distinguished from those present here. In *Bergman* the following factors were determined to be significant in tipping the balance: the information provided by the informant was twenty-two years old; the Government refused to verify whether or not any of its informants were still alive; and [a]ny information which the FBI possessed was gained through confidential informants and documentation generated through the use of those informants. *Id.* at 1361. None of those factors is present in the case at bar.

## V

The Court finds and concludes that the plaintiffs have failed to carry their burden of showing that their need for the informer's identity outweighs the claim of privilege. However, the Court will direct that all information furnished to the authorities by the informer be disclosed to the plaintiffs except for any matters tending to reveal the informer's identity. To achieve this end, the Court will maintain close supervision of discovery in this action and will continue the practice of scheduling discovery conferences as the need arises. Finally, the relief sought by the movants, a direction forbidding disclosure by any party or witness in the action, is "greater than is necessary to protect the public interest," *Seattle Times v. Rhinehart,* —— U.S. ——, ——, 104 S.Ct. 2199, 2207–08, 81 L.Ed.2d 17 (1984). The motion seeks an order of protection in the context of the general procedural provisions relating to discovery, Fed. R.Civ.P. 26, and is granted only to the extent that the disclosure of the identity of the confidential informant through any discovery device shall be prohibited.

It is so Ordered.