**Rose D. CIPOLLONE and Antonio Cipollone, Plaintiffs,**

v.

**LIGGETT GROUP INC., Philip Morris Incorporated, and Loew's Theatres, Inc., Defendants.**

**Civ. A. No. 83–2864.**

United States District Court,
D. New Jersey.

July 17, 1985.

576

Marc Z. Edell, Porzio, Bromberg & New-
man, Morristown, N.J., Alan M. Darnell,
Wilentz, Goldman & Spitzer, Woodbridge,
N.J., David J. Novack, Budd, Larner, Kent,
Gross, Picillo & Rosenbaum, Newark, N.J.,
for plaintiffs.

Raymond F. Drozdowski, Brown, Con-
nery, Kulp, Wille, Purnell & Greene, Cam-
den, N.J., for defendant Philip Morris Inc.

Barry L. Shapiro, and Charles J. Walsh,
Sills, Beck, Cummis, Zuckerman, Radin &
Tischman, Newark, N.J., for defendant
Loew's Theatres, Inc.

Alan S. Naar, Greenbaum, Greenbaum,
Rowe, Smith, Bergstein, Yohalem & Bruck,
Newark, N.J., for defendant Liggett
Group, Inc.

OPINION

SAROKIN, District Judge.

This is an appeal from an order of the magistrate prohibiting the plaintiff from disseminating or publicizing documents, testimony and other matters obtained through the discovery process. In review-ing an order of this nature, certain funda-mental principles must be considered be-fore addressing the specific terms and con-ditions of the order on appeal.

Materials obtained through the discovery process are the result of a form of judicial compulsion. Were it not for the existence of the ongoing litigation, the parties would not have access to most of the information so produced. Such production has been mandated under the rules so as to assure the full exchange of information and ulti-mately a fair determination on the merits after complete exploration of all of the relevant facts.

■ The extensive discovery allowed un-der the Federal Rules of Civil Procedure was never intended as a device to procure information for a purpose unrelated to the pending litigation. However, having once obtained information which is properly within the ambit of the Rules, the question arises as to what other use, if any, can be made of the fruits of such discovery. Gen-erally speaking, discovery materials fall into three categories: 1) that which is al-ready public knowledge; 2) that which is private, i.e., something that would not be known publicly but for the discovery; and 3) that which is truly secret, the revelation of which would substantially injure the cus-todian or another.

■ Obviously in this case we are not concerned with the first category, since there is no reason to protect matters al-ready in the public domain. It is the sec-ond category which creates the greatest difficulty. In the usual private litigation not involving the public interest, it would not be appropriate to permit the release of private materials whose existence and con-tent were disclosed only as the result of the litigation. However, that right of privacy must be balanced against the first amend-ment and consideration of whether the in-formation so obtained is of such great in-terest as to permit its publication beyond the litigation itself.

It would be difficult to envision a case involving a greater or more widespread interest. Other than food and water, there is probably no substance more utilized than tobacco. Its use affects hundreds of mil-lions of people throughout the world. Its effects have been debated and reported in the press extensively. It has been the re-peated subject of legislation, medical inves-tigation and now litigation.

■ Plaintiffs contend that the discovery in this matter reveals the knowledge of the tobacco industry regarding the effects of smoking, the steps taken to conceal and offset that knowledge, the efforts to enlist

the aid of legislators and the medical profession to support the industry and mislead the public, and an alleged conspiracy of silence and chicanery within the industry itself. The court makes no finding at this juncture as to the validity of any of those charges, but it cannot be a party to their suppression if they are true. In the court's view, none of the foregoing appear to come within the third category mentioned above. These matters may be private and their disclosure may prove embarrassing and incriminating, but that alone would not be sufficient to bar them from the public and the press.

■ Defendants continue to be entitled to protection from the disclosure of matters which are truly secret, where disclosure thereof will affect the operation of their business, but not their potential liability. Formulae, marketing strategy and other matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business are entitled to protection. But their part, *if any,* in concealing or misrepresenting information regarding the risks of smoking is not entitled to such protection.

There is a further reason for permitting the disclosure of such information and that is the existence of numerous other similar suits, particularly those in which the same counsel are representing plaintiffs. The court cannot ignore the might and power of the tobacco industry and its ability to resist the individual claims asserted against it and its individual members. There may be some claimants who do not have the resources or such able and dedicated counsel as in this case to pursue the thorough investigation which these cases require. To require that each and every plaintiff go through the identical, long and expensive process would be ludicrous. Even from the point of view of the defendants (though they resist), it would seem that they would benefit by avoiding repetition of the same discovery in each and every case. There can be no justification for defendants' position other than to discourage other claimants and deprive them of evidence already known and produced to others similarly situated.

For these reasons, the court is compelled to reverse in part and affirm in part the protective order entered by the magistrate in this matter. Under the first amendment the public has a right to know what the tobacco industry knew and knows about the risks of cigarette smoking and what it did or did not do with regard to that knowledge.

■ The order in its present form interferes with the first amendment in that it extends protection to all discovered materials and imposes upon plaintiffs the obligation to move for their release from the prohibitions of the order. To impose such a threshold requirement upon a single plaintiff against a giant industry diminishes the first amendment rights of others who should have access to such information, namely the general public and other similarly situated claimants. The obligation to move for such protection and justify its need should be upon defendants, rather than upon plaintiffs. The presumption should be one of freedom to publish rather than one of restraint. To impose such burden upon plaintiffs and require them to remove barriers unilaterally imposed by defendants would result in an expenditure of time and money which alone could destroy the first amendment rights here implicated.

## THE ORDER

The Protective Order here appealed from was entered on March 25, 1985 by the Honorable Robert E. Cowen, United States Magistrate, who has been ably supervising discovery in these complex cases. The Order limits the extent to which plaintiffs may disclose certain confidential information made available by defendants in discovery proceedings regarding these matters. To that end, the Order provides that "[a]ll information produced or exchanged in the course of this civil action or any appeal arising therefrom ... shall be used solely for the purpose of this case," ¶ 2, and shall

be returned or destroyed after trial. ¶ 13. More complex limitations are imposed upon "confidential information." Based upon a "good-faith belief that the information falls within the scope of confidential information under the Federal Rules of Civil Procedure," ¶ 3, such information, which may be documentary, oral, or even in the nature of summaries, ¶ 8, is to be labelled accordingly, ¶ 4, and filed, or otherwise utilized, under seal. ¶¶ 11–12. *See also* ¶ 5 (deposition testimony). Nor may claims of confidentiality be inadvertently waived. ¶ 9.

Once labelled, confidential information is, under the order, open for inspection only by counsel or their associates or employees, ¶ 6(a), or by experts retained for the purposes of the litigation, ¶ 6(b), but the latter are required to sign an oath attesting to their understanding that they are bound by the terms of the order. ¶ 7. Any disclosure other than to counsel and medical experts may be made only upon express or implied consent or, lacking consent, permission of the court. ¶ 10. In obtaining such consent, "the party seeking disclosure shall advise counsel and the court, in writing, of the name, address and occupation of the person to whom counsel proposed to disclose, for the purposes of this litigation, said confidential information." *Ibid.* Additional protections, or other modifications of the order, may also be sought. ¶¶ 15–16.

Plaintiffs argue that entry of this order constitutes an abuse of discretion, and a violation of both the first amendment and of basic discovery principles. In particular, plaintiffs attack now, as they attacked below, the following aspects of the order:

(1) plaintiffs contend that it is improper to require *all* information produced or exchanged to be used only in the instant litigation. ¶ 2. They argue that it is only appropriate to limit the use of *confidential* information and that, in any event, counsel should be able to use the information gathered here in other cases in which they are counsel of record. *See* Plaintiffs' Exh. B, ¶ 2; Exh. C, ¶ 2, Plaintiffs' Brief at 24–25. Plaintiffs also propose to allow witnesses to use information disclosed herein in other

cases in which they are expert witnesses, or in which plaintiffs' counsel are counsel of record. Plaintiffs' Exh. B, ¶ 6; Exh. C, ¶ 6; Plaintiffs' Brief at 29–31. *See* Order ¶ 7.

(2) plaintiffs contend that there must be an enforcement mechanism in the event that defendants label confidential that which is not. The enforcement mechanism suggested by plaintiffs requires defendants to establish the confidentiality of a challenged document by motion, and to pay costs and counsel fees if they cannot. *Compare* Order ¶ 3 *with* Plaintiffs' Exh. B, ¶ 3; Exh. C., ¶ 3. *See also* Plaintiffs' Brief at 25–27. Indeed, much of plaintiffs' excellent brief is devoted to providing the court with examples of documents which defendant has marked as confidential, but which plaintiffs argue should not be, since they contain not trade secrets, but documentation of cigarette industry public relations strategies, some of which consist of matters of public record. *See* Plaintiffs' Brief at 10–22 and Exhs. J–Y.

(3) plaintiffs do not include depositions in the list of types of discovery information which may be labelled "confidential." *Compare* Order ¶ 5 *with* Plaintiffs' Exhs. B–C. *See* Plaintiffs' Brief at 28.

(4) plaintiffs argue that documents already disclosed ought not be able to be retroactively labelled confidential. *Compare* Order ¶ 9 *with* Plaintiffs' Exhs. B–C. *See* Plaintiffs' Brief at 31–33.

(5) plaintiffs' most vehement objection is to paragraph ten of the order. They contend that, as drafted, such paragraph requires counsel to identify persons to whom confidential information will be disclosed, thereby allowing "defendants to control and manipulate the preparation and trial of plaintiffs' case." Plaintiffs' Brief at 10. *See also Id.* at 79–81. As an alternative, plaintiffs suggest that the names, addresses and occupations of the recipients of such information be filed with the court only, along with a certification to the effect that such recipients "are not now, have never been, or do not contemplate any association with a competitor of defendant," and that

they will not disclose such information except for purposes of litigation. Such information and certification would be filed under seal. *See* Plaintiffs' Exh. C, ¶ 8; Transcript of Proceedings (3/25/85) at 26–28. The Magistrate, however, rejected this suggestion, holding that defendants had a right to know plaintiffs' proposed expert witnesses "before you sign them on," *id.* at 29, "before he sees document one." *Id.* at 30.

(6) plaintiffs object to the requirement in paragraph thirteen of the order that they return or destroy discovery materials which they label "proprietary." Plaintiffs' Brief at 36.

(7) finally, plaintiffs object to paragraphs fifteen and sixteen of the order, fearing that the already broad protection afforded defendants may be expanded in the future. *Id.* at 37.

Plaintiffs' arguments are couched in terms of important first amendment principles, as well as standard notions of maximizing the efficiency, breadth and openness of the discovery process. Nonetheless, the Magistrate rejected such arguments, holding instead that the Order entered would "facilitate the efficacious production of documents and discovery of the defendants to some extent and that it will streamline the litigation to the point where the discovery sought and had in this case will be for this case and this case alone, and that at the time this case is tried that, of course, anything that goes into the record at that time will be of a public matter and public information." Transcript of Proceedings at 56. In so deciding, the Magistrate followed the lead of the United States District Court for the District of Massachusetts which, on February 25, 1985, entered an identical order in the matter of *Palmer v. Liggett Group, Inc.*, Civil Action No. 83–2445, *see* Liggett's Brief, Exh. B, as well as that of the Honorable John W. Devine, United States Magistrate for the District of New Jersey, in the matter of *Barnes v. R.J. Reynolds Tobacco Co.*, Civil Action NO. 84–56 (AET). Since the entry of the order here appealed from, the United

States District Court for the Western District of Oklahoma has entered an order in a smokeless tobacco products liability case far more favorable to plaintiffs: only confidential information was covered; defendant was required in the event of a dispute to demonstrate confidentiality; and the identity of non-medical experts was not required to be revealed prior to their review of confidential information. *See* Plaintiffs' Reply Brief at 4–7 and Exh. C; Aff. of Marc Z. Edell (5/6/85) ¶ 6. Hence, this court addresses such issue in the wake of divided precedent.

## DISCUSSION

### A. *Standard of review*

■ In reviewing the Protective Order here at issue, the court is cognizant of the limited scope of its review of nondispositive pretrial rulings by the Magistrate: the court may reverse only if such rulings are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); General Rule 40 D(4)(a) of the U.S.Dist.Ct. for the Dist. of N.J. *See generally United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980); *Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013, 1016–17 (5th Cir.1981); *Empire Volkswagen, Inc. v. World-Wide Volkswagen, Inc.,* 95 F.R.D. 398, 399 (S.D.N.Y.1982) (a litigant who seeks to overturn a magistrate's discovery order "bears a heavy burden"). *See also Gross v. G.D. Searle & Co.,* 738 F.2d 600, 602 (3d Cir.1984) (court reviewed protective order under clearly erroneous or contrary to law standard). However, because first amendment rights are implicated, the court is required to assess the record independently "to make sure 'that the [order] does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, ——, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984), quoting *New York Times v. Sullivan,* 376 U.S. 254, 284–86, 84 S.Ct. 710, 728–29, 11 L.Ed.2d 686 (1964) and citing *NAACP v. Claiborne Hardware,* 458 U.S. 886, 933–34, 102 S.Ct. 3409,

3436–37, 73 L.Ed.2d 1215 (1983); *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 11, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970); *St. Amant v. Thompson*, 390 U.S. 727, 732–33, 88 S.Ct. 1323, 1326–27, 20 L.Ed.2d 262 (1968). For this reason, the court here "exercise[s] its ultimate prerogative to conduct a *de novo* review" of the Magistrate's ruling. *Foster v. Gloucester County Board of Chosen Freeholders*, 465 F.Supp. 293, 296 (D.N.J.1978). *See also* 7 Moore's *Federal Practice* ¶ 72.02[4.–9], at 72–20, ¶ 72.04[2.–6], at 72–53 (1984); 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3076.5, at 34 (1985 Supp.), citing, *e.g., West v. Redman*, 530 F.Supp. 546, 547–48 (D.Del.1982).

### B. *The First Amendment Analysis*

Prior to May 21, 1984, the problem posed by the conflict between the first amendment right to free expression, on the one hand, and the court's responsibility to oversee the discovery process, on the other, was the subject of considerable debate and legal uncertainty. The nation's courts of appeal were divided on the issue: the Court of Appeals for the District of Columbia Circuit, in the much-discussed case of *In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), held that first amendment rights attach to materials made available through the discovery process, 598 F.2d at 190, and that protective orders trenching on such rights pass constitutional muster only if

> the harm posed by dissemination [is] substantial and serious; the restraining order [is] narrowly drawn and precise; and there [is] no alternative means of protecting the public interest which intrudes less directly on expression.

598 F.2d at 191.[1] The Court of Appeals for the First Circuit adopted a less stringent standard, which it characterized as "a position ... midway between those taken in the majority and dissenting opinions in *Halkin*."[2] *In re San Juan Star Co.*, 662 F.2d 108, 116 (1st Cir.1981). It described such position as follows:

> We look to the magnitude and imminence of the threatened harm, the effectiveness of the protective order in preventing the harm, the availability of less restrictive means of doing so, and the narrowness of the order if it is deemed necessary. Our adaption [sic] of this standard in a civil discovery context, however, allows a court to be slightly less severe when considering the degree and imminence of the harm that might ensue if communications to the press are not prohibited. Thus, we consider the magnitude of the harm threatened by disclosure and the likelihood of that harm occurring, but we

**1.** *Halkin* was much criticized by the commentators. *See, e.g.,* R. Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L.Rev. 1 (1983); Note, *The First Amendment Right to Disseminate Discovery Materials: In re Halkin,* 92 Harv.L.Rev. 1550 (1979). *But see* Note, *Rule 26(c) Protective Orders and the First Amendment,* 80 Colum.L.Rev. 1645 (1980) (approving the standard adopted in *Halkin,* while criticizing its reasoning). Nonetheless, the *Halkin* standard was extended to communications between lawyer and client by the D.C. Circuit, *see Doe v. District of Columbia,* 697 F.2d 1115, 1120 (D.C. Cir.1983), and seemed to be adopted by at least one other circuit. *See Krause v. Rhodes,* 671 F.2d 212, 219 (6th Cir.) (post-trial dissemination), *cert. denied,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); *National Polymer Products, Inc. v. Borg-Warner Corp.,* 641 F.2d 418, 423–25 (6th Cir.1981). More important, it proved extremely influential in the district courts, which either followed it, *see, e.g., United States v. General Motors Corp.,* 99 F.R.D. 610,

612 (D.D.C.1983); *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981); *Brink v. DaLesio,* 82 F.R.D. 664, 677–78 (D.Md.1979); *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation,* 81 F.R.D. 482, 485–86 (E.D.Mich. 1979), *aff'd,* 664 F.2d 114 (6th Cir.1981), or at the very least, were obliged to come to terms with it. *See, e.g., International Union v. Garner,* 102 F.R.D. 108, 111–13 (M.D.Tenn.1984); *In re Agent Orange Product Liability Litigation,* 98 F.R.D. 539, 542 (E.D.N.Y.1983) *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 475–80 (S.D.N. Y.1980); *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866, 908–15 (E.D.Pa.1981).

**2.** The latter focused solely upon whether "good cause" had been shown pursuant to Federal Rule of Civil Procedure 26(c), concluding that where good cause was not established, the first amendment was violated, and where good cause was established, no first amendment violation could exist. 598 F.2d at 209.

think these considerations are best applied on a sliding scale: as the potential grows more grave, the imminence necessary is reduced.

*Ibid.* The Second Circuit disagreed with the notion that first amendment concerns were implicated by a legitimate protective order. *International Products Corp. v. Koons,* 325 F.2d 403, 407 (2d Cir.1963).[3] When the Supreme Court of Washington agreed with the position of the Second Circuit, the Supreme Court granted *certiorari* to resolve the conflict then existing between the circuits. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, ——, 104 S.Ct. 2199, 2205, 81 L.Ed.2d 17 (1984).

The Court's decision in *Seattle Times* clarifies both the applicability of the first amendment to protective orders issued in the civil discovery context, and the standard to be utilized in conducting the resulting constitutional analysis. Thus, the Court held that "information obtained through civil discovery authorized by modern rules of civil procedure would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court." 104 S.Ct. at 2206. In *Seattle Times,* the Court held the first amendment clearly to be implicated, in light of the great degree of public interest in plaintiff Rhinehart, the leader of a religious group known as the Aquarian Foundation. Much greater is the public interest in this case, involving claims of liability against cigarette companies for failure to warn and other theories. *See Cipollone v. Liggett Group, Inc.,* 593 F.Supp. 1146, 1149 (D.N.J. 1984) (summarizing complaint). *See also Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1180 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984) (documents unsealed in part because "[t]he public has a strong interest in obtaining the information con-tained in the court record. The subject of this litigation potentially involved the health of citizens who have an interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market."). Hence, there is no question but that some constitutional analysis must be undertaken here.

■ The *Seattle Times* Court set forth the analysis to be conducted.

The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental Interest" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413 [94 S.Ct. 1800, 1811, 40 L.Ed.2d 224] (1974).

104 S.Ct. at 2207. Such analysis, the Court concluded, required "no heightened First Amendment scrutiny," *id.* at 2209, since the information at issue had been obtained only by virtue of court discovery processes, which processes are inherently private and may concern information "unrelated, or only tangentially related, to the underlying cause of action." 104 S.Ct. at 2207–08. The Court added that "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 2208.

■ The Supreme Court also simplified the resulting analysis by holding that, as a matter of law, "Rule 26(c) furthers a sub-

---

**3.** Citing *Koons,* the Third Circuit has stated that "[i]t may well be ... that the parties and counsel, by taking advantage of or a part in the discovery process, implicitly waive their First Amendment rights freely to disclose or disseminate the information obtained through these processes." However, such statement was by way of dictum, characterized by the court as being assumed *arguendo* for the purposes of the appeal before it. *Rodgers v. United States Steel Corp.,* 536 F.2d 1001, 1006 (3d Cir.1976). The court therefore regards the instant issue as not having been addressed by the Third Circuit.

stantial governmental interest unrelated to the suppression of expression." *Ibid.* It therefore remained there, and remains here, to decide only whether the protective orders at issue limited first amendment freedoms more than necessary or essential to protect the governmental interests furthered by Rule 26(c). The Supreme Court found there to be no violation of the first amendment, in light of the fact that the Supreme Court of Washington "found no abuse of discretion in the trial court's decision to issue a protective order pursuant to a constitutional state law." The Court ended its Opinion by stating:

> We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.

104 S.Ct. at 2209–10 (footnote omitted). Such statement of the Court's holding apparently motivated Justices Brennan and Marshall to concur separately, with a reminder that the courts must continue to decide whether, even if good cause is shown, the limitations on first amendment expression imposed by a protective order are no greater than necessary. 104 S.Ct. at 2210 (Brennan, J., concurring).

The *Seattle Times* decision has, of course, had a profound impact upon the litigation of issues such as the one now before the court. Thus, for example, *Halkin* has been recognized as no longer "good law." *See Tavoulareas v. Washington Post Co.*, 737 F.2d 1170 (D.C.Cir. 1984) (en banc). Moreover, at least one court was forced to reconsider a prior opinion on the subject, and in so doing, to recognize that "the discussion in *Seattle Times* certainly removes much of the authority for the Court's discussion of the first amendment interests at play in pretrial discovery." *International Union v. Garner, supra*, 102 F.R.D. at 117. In general, *Seattle Times* has been utilized to justify the imposition of restraints on parties at various stages of litigation, *see, e.g.,*

*Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985); *Miller v. Mecklenburg County*, 606 F.Supp. 488, 490 (W.D.N.C.1985); *United States v. Smith*, 602 F.Supp. 388, 394–97 (M.D.Pa.1984); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 597 F.Supp. 621, 623 (D.D.C.1984), though others have refused to issue protective orders in spite of it. *See, e.g., United States v. Hooker Chemicals & Plastic Corp.*, 599 F.Supp. 655, 658 (W.D.N.Y.1984); *International Union v. Garner, supra*, 102 F.R.D. at 117. More importantly, courts have split on the meaning of the last passage in the *Seattle Times* majority opinion. Some have focused exclusively upon such passage in a manner indicating that, if a protective order passes muster under Rule 26(c), it must, of necessity, be constitutional. *See Oklahoma Hospital Association v. Oklahoma Publishing Co.*, 748 F.2d 1421, 1424 (10th Cir.1984); *Worrell Newspapers of Indiana, Inc. v. Westhafer*, 739 F.2d 1219, 1223–24 n. 4 (7th Cir.1984); *Tavoulareas, supra*, 737 F.2d at 1172–73; *In re Agent Orange Product Liability Litigation*, 104 F.R.D. 559, 566 (E.D.N.Y.1985). Others, however, have emphasized that *Seattle Times* requires a restriction to be no greater than necessary to protect the public interest, *see Michelson v. Daly*, 590 F.Supp. 261 (N.D.N.Y.1984), and, indeed, the Supreme Court cites *Seattle Times* for that very proposition. *See Wayte v. United States*, —— U.S. ——, ——, 105 S.Ct. 1524, 1533, 84 L.Ed.2d 547 (1985).

The court finds the *Seattle Times* decision imprecise on this point. Its admonition that restrictions imposed by protective orders be no greater than necessary, 104 S.Ct. at 2207, is absent from the final formulation of its holding. *See Id.* at 2209–10. Such absence has one of two meanings: either the "good cause" standard enunciated by Rule 26(c) of necessity takes into account the notion that protective orders are to be narrowly drawn, or one looks to "good cause" in the first instance, and, only if it is present, to the first amendment implications thereafter. In either event,

the appropriate next step is an analysis of the instant Protective Order under Rule 26(c).

### C. *The Rule 26(c) Analysis*

Federal Rule of Civil Procedure 26(c) states:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by court.

■ The party seeking a protective order under this section bears the burden of proving its necessity. *See, e.g., In re E.E.O.C.,* 709 F.2d 392, 401, n. 7 (5th Cir. 1983); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 391 (2d Cir.1981); *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citing cases); *In re Agent Orange Product Liability Litigation,* 104 F.R.D. 559, 571 (E.D.N.Y.1985); *Niren v. Immigration*

*and Naturalization Service,* 103 F.R.D. 10, 11 (D.Ore.1984); *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., supra,* 529 F.Supp. at 890–91 (citing cases). *See generally* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035, at 264–65 (1970 and 1985 Supp.). Where, as here, the purpose underlying the protective order at issue is the protection of confidential materials, *see* Protective Order at 1 ("It appearing that the plaintiffs' demands for the production and inspection of documents and records may require the disclosure of confidential records and private information . . ."), discharging such burden normally entails showing both that the information sought requires protection under the Rule, and that disclosure will result in clearly defined and serious injury. *See, e.g., Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 325–26 (10th Cir.1981) (citing cases); *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 954 n. 5 (8th Cir.), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *Cutler v. Lewiston Daily Sun,* 105 F.R.D. 137, 140 (D.Maine 1985); *Zenith Radio, supra,* 529 F.Supp. at 889, 891 (citing cases); *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 28 (E.D.Mich.1981) (citing cases); *Koster v. Chase Manhattan Bank, supra,* 93 F.R.D. at 479 (S.D.N.Y.1982). Once this burden is discharged, it generally shifts back to the party opposing the protective order to show why such order ought not be entered. *See generally* 8 C. Wright & A. Miller, *supra,* § 2043, at 301–02. *See, e.g., Centurion, supra,* 665 F.2d at 325–26.

■ The court assumes the need for an "umbrella order" such as that sought to be entered here, and agrees with the Magistrate and the parties that such an order is the best way to handle litigation as complex as this. *See, e.g., Tavoulareas v. Washington Post Co.,* 724 F.2d 1010, 1023–24 (D.C.Cir.1984), *vacated on other grounds,* 737 F.2d 1170 (D.C.1984) (en banc); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 101 F.R.D. 34, 36, 41, 44 (C.D.Calif.1984); *In re Agent Orange*

*Product Liability Litigation,* 96 F.R.D. 582, 585 (E.D.N.Y.1983) *Zenith Radio, supra,* 529 F.Supp. at 879 n. 18, 889, 915; *In re Coordinated Pretrial Proceedings in Western Liquid Asphalt Cases,* 18 Fed.R. Serv.2d 1251, 1252 (N.D.Cal.1974). *See Manual for Complex Litigation, reprinted in* 1 Moore's, *supra,* § 2.00–II(E)(2) (sample protective order). However, the prevailing law remains that defendants must bear the burden of demonstrating the necessity for each provision of such order. *See In re Agent Orange Product Liability Litigation, supra,* 104 F.R.D. at 568–70 (burden remains on party·seeking continued protection from order in light of first amendment interest set forth in *Seattle Times* ); *U.S. v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 425 (W.D.N.Y. 1981) (movant failed to bear burden of proving need for protective order). Here, the reasons asserted are quite conclusory: the Magistrate states merely that "having this order in place will facilitate the efficacious production of documents and discovery of defendants to some extent and that it will streamline the litigation...." Transcript of Proceedings at 56. Defendants echo this conclusion, Brief of Defendant R.J. Reynolds at 10, 25; Brief at Defendant Liggett Group, Inc. at 11, 26, 29; Brief of Defendant Loew's Theatres, Inc. at 2–4, asserting as additional reasons for the Order only that plaintiff's counsel ought not be allowed "to use this discovery as a bargaining tool with attorneys in other jurisdictions to assure New Jersey counsel's participation in such cases," Liggett Brief at 14–15, and that vacating the Order would impermissibly infringe defendants' right to petition government. Brief of Defendant Tobacco Institute at 6 n *. The court has considered these. reasons in light of the applicable law, as set forth above, and, accordingly modifies the Protective Order as follows.[4]

[4]. In the discussion which follows, the party seeking disclosures is denominated "plaintiffs" and that resisting it "defendants" for the sake of convenience, and in that such is the parties' current posture before this court. The Order itself speaks, correctly, in more general terms, allowing for the reversal of roles.

*1. Non-confidential information*

 Paragraph 2 of the Protective Order states that *"[a]ll* information produced or exchanged in the course of this civil action ... shall be used solely for the purpose of this case." Order ¶ 2 (emphasis added). To this extent, the Order oversteps the bounds permitted by Rule 26(c), and consequently of the first amendment, by limiting the flow of information without any cause whatsoever. The Order will accordingly be altered to cover only confidential information.

*2. Designation of confidential materials*

As it now exists, the Protective Order allows defendants to designate as confidential any information as to which it has a "good faith belief that the information falls within the scope of confidential information under the Federal Rules of Civil Procedure and the precedents thereto." Order ¶ 3.[5] No mechanism. is created for plaintiffs to challenge this designation in the event of its misuse, except at the point of a proposed disclosure of such information "to any person, other than outside counsel and their employees or medical experts." Order ¶ 10. Then, defendants may consent to such disclosure or make application to the court to prohibit it. *Ibid.* Plaintiffs suggest a procedure to challenge confidentiality much earlier in the process, before material is labelled. Order ¶ 4. The. court agrees that such procedure is required, and has modified paragraph three of the Order to require defendants to show good cause for any and all confidentiality designations. As revised, that paragraph allows defendants to designate information as confidential pending either an agreement to that effect with plaintiff, or the decision on a

[5]. The court agrees with defendants that confidential information may be contained in depositions as well as printed matter.

motion to that effect made by defendant within ten days of such designation. This system does not allow misuse of the confidentiality designation and places the burden of proving such confidentiality squarely upon defendants, as is required by Rule 26(c) and the first amendment. *See, e.g., In re Petroleum Products, supra,* 101 F.R.D. at 44 ("Umbrella protective orders do serve to facilitate discovery in complex cases. However, umbrella protection should not substantively expand the protection provided by Rule 26(c)(7) or countenanced by the common law of access. To reverse the burden in this situation would be to impose a significant and perhaps overpowering impairment on the public access right."); *Zenith Radio, supra,* 529 F.Supp. at 893, 915 (order does not shift the burden of showing confidentiality, leaving it, "as the Constitution requires, on the party seeking protection."). *See also In re Agent Orange, supra,* 104 F.R.D. at 574 (defendants bear burden of showing why information should be designated confidential in the first instance). *But see In re Agent Orange, supra,* 96 F.R.D. at 585 (proponents of dissemination must indicate which documents they wish to disseminate, at which point burden is on opponents of dissemination to show good cause for existence of protective order); *Chambers Development Co. v. Browning-Ferris Industries,* 104 F.R.D. 133, 136 (W.D.Pa.1985) (party objecting to confidentiality must apply to the court). *See generally* Marcus, *supra,* 69 Cornell L.Rev. at 18 ("Usually, [stipulated protective orders] permit any party to challenge the confidentiality desig-

nation and obtain a ruling on the issue. At that point the burden of showing that the designated materials are confidential falls on the producing party.") (footnotes omitted).[6]

■■■■ To allow information to become presumptively confidential without affording plaintiffs an opportunity to disagree with that designation and then to bear the burden of mounting a challenge, would run afoul of the basic burden-shifting approach mandated by Rule 26(c). As such, it violates the first amendment after *Seattle Times.* Nor is the current Order necessary to protect the interest asserted by defendants, particularly where, as here, the information at issue is of great public interest and could be utilized to render future litigation far more efficient. Finally, the court notes that by requiring defendants to shoulder the burden of proving confidentiality in the first instance, it changes the Protective Order but little, for defendants were required to withstand a confidentiality challenge at a later stage even under defendants' version of the Order. *See* Order ¶ 10.[7]

### 3. *Use of Confidential Material*

■■■■ Once designated confidential, information disclosed in discovery may, under the Order as it now exists, be inspected only by counsel or their experts, for purposes of the instant litigation, Order ¶ 6, absent consent. Order ¶ 10. The court agrees that, assuming such information is, in fact, confidential within the meaning of Rule 26(c)(7),[8] and not merely undiscovered

---

**6.** This article was cited with approval by the Supreme Court in *Seattle Times* 104 S.Ct. at 2208.

**7.** The court hereby denies plaintiffs' motion to vacate paragraph 9 of the Order. Hence, in the event of inadvertent disclosure, defendants will not have waived their claim of confidentiality, unless, of course, subsequent disclosure by plaintiffs or others renders the issue moot, and confidentiality impossible. *See C & C Products, Inc. v. Messick,* 700 F.2d 635 (11th Cir.1983). Otherwise, defendants may designate information as confidential at any time, thereby triggering the ten-day time period contained in para-

graph three of the Order, as here revised by the court.

**8.** One court has listed the considerations pertinent to a determination of whether something is a trade secret as including:

(1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

*Reliance Ins. Co. v. Barron's,* 428 F.Supp. 200, 203 (S.D.N.Y.1977), citing *United States v. IBM,*

prior to the instant litigation, *see supra,* at 2–4, the protections of paragraph ten ought to apply. *See Tavoulareas, supra,* 724 F.2d at 1013 n. 6 ¶ 9. However, it does not agree that it is either justified, or wise, to restrict even confidential materials to use by plaintiffs' attorneys in this litigation; therefore, the court will allow plaintiffs' counsel to utilize such materials in other litigation in which they are participants, as has been recognized as wise in many other cases. *See, e.g., Phillips Petroleum Co. v. Pickens,* 105 F.R.D. 545, 550–51 (N.D.Texas 1985); *Ward v. Ford Motor Co.,* 93 F.R.D. 579, 580 (D.Colo.1982) ("The plaintiffs' attorneys' discovery information exchange group reduces the effort and expense inflicted on all parties, including [defendant] by repetitive and unnecessary discovery. In this era of ever expanding litigation expense, any means of minimizing discovery costs improves the accessibility and economy of justice. If, as asserted, a single design defect is the cause of hundreds of injuries, then the evidentiary facts to prove it must be identical, or nearly so, in all cases. Each plaintiff should not have to undertake to discovery [sic] anew the basic evidence that other plaintiffs have uncovered. To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel. Efficient administration of justice requires that courts encourage, not hamstring, information exchanges such as that here involved"); *Carter-Wallace v. Hartz Mountain Industries,* 92 F.R.D. 67, 69–70 (S.D.N.Y.1981), citing *Olympic Refining Co. v. Carter,* 332 F.2d 260, 266 (9th Cir.), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); *Hooker Chemicals, supra,* 90 F.R.D. at 426; *Parsons v. General*

*Motors Corp.,* 85 F.R.D. 724, 726 n. 1 (N.D. Ga.1980); *Patterson v. Ford Motor Co.,* 85 F.R.D. 152, 153–59 (W.D.Texas 1980); *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 410 (N.D.N.Y.1973) ("unless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums") (citing cases); *Williams v. Johnson & Johnson,* 50 F.R.D. 31, 33 (S.D.N.Y.1970). *See also Wilk v. American Medical Association,* 635 F.2d 1295, 1299–01 (7th Cir.1980); citing *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). *See generally* Marcus, *supra,* 69 Cornell L.Rev. at 41–46; E. Sherman and S. Kinnard, *Federal Court Discovery in the 80's—Making the Rules Work,* 95 F.R.D. 245, 284–91 (1982); Manual for Complex Litigation, *supra,* § 3.11–I. Indeed, at least one court has permitted the very evil here cited by defendants—the sale of discovery materials. *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation,* 81 F.R.D. 482, 484–85 (E.D. Mich.1979), *aff'd,* 664 F.2d 114 (1981). The court here finds that to allow plaintiffs' counsel to utilize the discovery from these matters in other cases in which they are involved is a particularly unoppressive application of this precedent, and one which will allow the court to maintain some control over the information disclosed while at the same time preventing the kind of duplication that would undermine the purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." Fed.R. Civ.P. 1.[9] The Protective Order will be modified accordingly.[10]

67 F.R.D. 40, 46 (S.D.N.Y.1975). *See also In re Agent Orange, supra,* 104 F.R.D. at 574–75 (discussing requirement of competitive harm) (citing cases).

These considerations are certainly relevant here, where the parties' concern, is, or ought to be at least in part, competitive injury. Of course, Rule 26(c) seeks to protect parties against "embarrassment" as well, *Rhinehart, supra,* 104 S.Ct. at 2208 n. 21; moreover, factors

such as defendants' constitutional right to petition government are also appropriate for consideration.

**9.** However, the court endorses neither the wholesaling of such discovery nor the monopolization of information by plaintiffs' counsel.

**10.** Paragraph 7 will also be modified, to allow experts to utilize information gained in one pro-

### (4) *Other*

Nowhere, in defendants' papers does there appear opposition to plaintiffs' application to vacate paragraph thirteen of the Order. It will therefore be vacated. However, the court wishes to maintain the flexibility allowed by paragraphs fifteen and sixteen of the Order. Plaintiffs' application to vacate them will be denied.

### CONCLUSION

The court concludes that, under the circumstances of this case, the Protective Order entered by the Magistrate was not justified by "good cause" under Federal Rule of Civil Procedure 26(c), and therefore constituted a violation of the first amendment, under *Seattle Times*. In so ruling, the court recognizes that the Supreme Court has abandoned the notion that discovery should be presumed "open". *See Seattle Times*, 104 S.Ct. at 2207–08 and n. 19. Notwithstanding this retrenchment, the court here finds that defendants have failed to bear their burden of showing that, without this Order, they would be harmed by the dissemination of nonconfidential documents, or confidential documents disclosed within narrowly defined parameters designed to expedite this litigation. Such burden is also one, the court finds, which defendants ought to continue to bear, in order to minimize abuse and maximize the free flow of information which is a matter of high public interest.

Not all information obtained through the discovery process should be available for publication beyond the litigation itself. However, before disclosure is limited or prohibited, a need for such restriction must be established. The burden of establishing such need should fall upon the party asserting it. To conclude otherwise would unduly restrict the free flow of information mandated by the first amendment. In a case such as this in which the public has a substantial interest, the court is reluctant to inhibit such disclosure absent a showing that there is good cause to do so. What are the risks of smoking; what the tobacco industry knew of those risks; and what action it took or did not take with that knowledge are matters of great public concern. It is difficult to envision that any of those matters involve "secrets" in the traditional sense, worthy of protection against public scrutiny. Indeed they may be secrets in the sense that the industry would prefer them to remain confidential, but not in the sense that their concealment from the press and public would be consistent with the first amendment.

Litigants are entitled to prove that information released through the compulsion of discovery proceedings should not be made public, and they are afforded the opportunity to do so. However, absent such a showing, information gleaned through discovery should be made available, particularly when the subject matter pertains to issues which affect the health and well-being of millions of persons.

ceeding in others in which they, or plaintiffs' counsel, are participants.